ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

Cassandra J. Wright
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S04-0506-PC-293

GERALD REED,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

_____

Appeal from the Marion Superior Court, No. 49G01-9511-PC-161354
The Honorable Tanya Walton Pratt, Judge
The Honorable Heather Welch, Master Commissioner

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-0408-PC-444

_____

**November 15, 2006**

**Rucker, Justice.**

**Case Summary**

The question we address is whether the failure to raise on appeal the aggregate length of a defendant's consecutive sentences for two counts of attempted murder amounts to ineffective assistance of appellate counsel. On the facts of this case, we conclude it does.

**Facts and Procedural History**

In November 1995 then twenty-four-year-old Gerald Reed was charged with two counts of attempted murder for firing a weapon at police officers during a car chase. He was also charged with carrying a handgun without a license. The essential facts are these. In the early evening hours of November 1, 1995 Indianapolis police officer Marlene Neitzel was investigating a domestic disturbance on the northeast side of the city. Officers Michael Roach and William Beachum arrived on the scene to serve as back up. Reed appeared in the area and attempted to drive his car between Officer Neitzel's and Officer Roach's parked police cruisers. His car got stuck. An accident officer called to investigate this rather minor matter instructed Reed to back his car out of the jam. He did so, but then fled the area with several marked squad cars in pursuit. After about two minutes, Reed stopped his car, opened the car door, and fired a single gunshot at Officers Roach and Beachum who were in close proximity to each other. He then closed the door and began driving away. A few seconds later, Reed slowed down and fired two additional shots in the direction of Officer Beachum. Ultimately the pursuing officers disabled Reed's car with "stop sticks" and Reed was apprehended. The entire pursuit lasted about ten minutes, and none of the officers was injured.

On November 2, 1995, the State charged Reed with the attempted murder of Officer Roach and carrying a handgun without a license as a Class A misdemeanor. The handgun charge was enhanced to a Class D felony because Reed had acquired a prior felony conviction. At Officer Beachum's request, the State filed an amended information on January 16, 1996 adding a charge of attempted murder of Officer Beachum. Reed waived his right to trial by jury and, after a bench trial, was convicted as charged. The trial court sentenced Reed to consecutive forty-year terms for the two attempted murder convictions and four years for the handgun conviction, to be served concurrently, for a total executed term of eighty years. He appealed. In an unpublished memorandum decision the Court of Appeals affirmed the trial court's judgment. Reed v. State, No. 49A05-9610-CR-438 (Ind. Ct. App. Dec. 22, 1997), trans. denied.

On September 14, 2000 Reed filed a *pro se* petition for post-conviction relief that was amended by counsel on February 23, 2004. The petition alleged the trial court erred in imposing

consecutive sentences because they exceeded the limitation for a single episode of criminal conduct under Indiana Code section 35-50-1-2(c) (1995 Supp.). The petition also alleged that both trial and appellate counsel rendered ineffective assistance for failing to raise this issue at trial or on appeal respectively. Entering findings of fact and conclusions of law, the post-conviction court denied Reed relief and rejected his claims on the following grounds: (1) sentencing errors cannot be raised as freestanding claims – Reed thus waived this claim for review; (2) that even if waiver does not apply, the issue of consecutive sentencing was raised on direct appeal and decided against Reed and therefore is now *res judicata*; (3) trial counsel did not render ineffective assistance because counsel is not required to object to the trial court's sentencing determination in order to preserve the issue for review; and (4) appellate counsel did not render ineffective assistance because Reed did not demonstrate that counsel failed to present a significant and obvious issue for review. The post-conviction court also concluded that the two attempted murders were not a part of a single episode of criminal conduct. On review the Court of Appeals affirmed the judgment of the post-conviction court. Reed v. State, 825 N.E.2d 911 (Ind. Ct. App. 2005). In so doing the court agreed that Reed waived his freestanding sentencing claim and did not receive ineffective assistance of trial or appellate counsel. Because of its holding concerning waiver, the Court of Appeals did not address the post-conviction court's *res judicata* determination. Having previously granted transfer, we now reverse the judgment of the post-conviction court.

## Discussion

### I.

In his petition to transfer, Reed focuses upon whether his actions in firing at two police officers constituted a single episode of criminal conduct. Reed does not address the Court of Appeals' determination that there was no ineffective assistance of trial or appellate counsel. And he devotes only one paragraph on the last page of his brief to complain that he did not waive his freestanding claim of sentencing error.

We agree that Reed may not raise a freestanding claim of sentencing error. The law in this jurisdiction is settled that sentencing issues which are known or available at the time of

3

direct appeal but are not raised are waived for post-conviction review. Collins v. State, 817 N.E.2d 230, 232 (Ind. 2004); Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002). We also agree that trial counsel did not render ineffective assistance for failing to object to the trial court's imposition of consecutive sentences based upon Indiana Code section 35-50-1-2(c) (1995 Supp.). Counsel need not object to preserve a sentencing error for review. See Kincaid v. State, 837 N.E.2d 1008, 1010 (Ind. 2005) (observing that "this Court and the Court of Appeals review many claims of sentencing error . . . without insisting that the claim first be presented to the trial judge"). On these two points we summarily affirm the Court of Appeals' opinion. However, we disagree with the Court of Appeals on the question of whether appellate counsel rendered ineffective assistance. We will address this issue in more detail momentarily. Before doing so, however, we must explore whether Reed is foreclosed by the doctrine of *res judicata* from advancing his sentencing error claim, even through the lens of ineffective assistance of counsel.

The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. Taylor v. State, 840 N.E.2d 324, 330 (Ind. 2006); Grey v. State, 553 N.E.2d 1196, 1197 (Ind. 1990). A post-conviction petition is not a substitute for an appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). Further, post-conviction proceedings do not afford a petitioner a "super-appeal." Benefiel v. State, 716 N.E.2d 906, 911 (Ind. 1999), cert. denied, 531 U.S. 830 (2000). Our post-conviction rules contemplate a *narrow remedy* for subsequent collateral challenges to convictions. Williams v. State, 706 N.E.2d 149, 153 (Ind. 1999), cert. denied, 529 U.S. 1113 (2000). If an issue was known and available but not raised on appeal, it is waived. Rouster v. State, 705 N.E.2d 999, 1003 (Ind. 1999). If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata*. Trueblood v. State, 715 N.E.2d 1242, 1248 (Ind. 1999), cert. denied, 531 U.S. 858 (2000).

The doctrine of *res judicata* bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties as the later suit. Annes v. State, 789 N.E.2d 953, 954 (Ind. 2003). As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of *res judicata* applies, thereby precluding its review in post-conviction proceedings. Ben-Yisrayl v.

4

State, 738 N.E.2d 253, 258 (Ind. 2000). The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. Sweeney v. State, 704 N.E.2d 86, 94 (Ind. 1998). And, a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. State v. Holmes, 728 N.E.2d 164, 168 (Ind. 2000). "[W]here an issue, *although differently designated*, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or *res judicata*." Cambridge v. State, 468 N.E.2d 1047, 1049 (Ind. 1984) (emphasis in original).

On direct appeal counsel for Reed phrased the sentencing claim as follows: "Whether the trial court failed to adequately articulate the reasons for enhancing Mr. Reed's sentences as well as running them consecutively." Pet. Exh. 2 at 1. In addressing this issue the Court of Appeals examined the trial court's sentencing statement and relevant case authority identifying the factors that a court may consider when enhancing a sentence or ordering consecutive sentences. The court determined, "Although here the trial court's sentencing explanation is not ideal, it does meet the minimum requirements necessary to be adequate. The record indicates that the trial court engaged in an evaluative process. The trial court identified the aggravating and mitigating factors." Reed, No. 49A05-9610-CR-438, slip op. at 5.

It is clear that although a sentencing issue was raised on direct appeal, no argument was made that the sentence was governed by Indiana Code section 35-50-1-2(c) (1995 Supp.). Accordingly the Court of Appeals did not address this issue. We do not view Reed's current claim as using different language to rephrase an issue that was adversely decided on direct appeal. Thus, the doctrine of *res judicata* is not applicable here. See Haggard v. State, 810 N.E.2d 751, 756 (Ind. Ct. App. 2004) (reversing in part the decision of the post-conviction court and addressing the claim that sentence was improper under Indiana Code section 35-50-1-2(c) although related sentencing issue raised sua sponte on direct appeal). We therefore address Reed's claim that he was denied effective assistance of appellate counsel.

5

## II.

### *Ineffective Assistance of Counsel*

The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in her performance and that the deficiency resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 686 (1984); Bieghler v. State, 690 N.E.2d 188, 192-93 (Ind. 1997). To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). To show prejudice, the petitioner must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. Id.

Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Fisher v. State, 810 N.E.2d 674, 677 (Ind. 2004); Bieghler, 690 N.E.2d at 193-95. To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Ben-Yisrayl, 738 N.E.2d at 261. To evaluate the performance prong when counsel waived issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. Timberlake v. State, 753 N.E.2d 591, 605-06 (Ind. 2001) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). If the analysis under this test demonstrates deficient performance, then we examine whether, "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Bieghler, 690 N.E.2d at 194 (citation omitted). Further, we must

> consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance . . . [and] should be particularly sensitive to the need for separating the

> wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

Id. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. Id. at 193. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Id.

### A. *Unraised issue significant and obvious?*

Indiana Code section 35-50-1-2(c) (1995 Supp.) limits a court's authority in imposing consecutive sentences if the convictions are not "crimes of violence" and the convictions "aris[e] out of an episode of criminal conduct." If both of these circumstances exist, then the total executed term is limited to the presumptive sentence of the next higher class of felony.[1] According to Reed, appellate counsel rendered ineffective assistance for failing to present on appeal the issue of whether the trial court's order that the sentences for attempted murder be served consecutively for a total of eighty years contravened the statute.

The State contended and the Court of Appeals agreed that Reed's felony convictions were not for "crimes of violence." They both reached this conclusion based upon this Court's opinion in Ellis v. State, 736 N.2d 731, 736 (Ind. 2000). Agreeing with an earlier Court of Appeals opinion that "the statute is clear" we noted that Indiana Code section 35-50-1-2, as it previously read, defined "crimes of violence" by supplying "a straightforward list [of crimes],

---

[1] The statute provides in relevant part:

> [T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively. . . . However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 [relating to habitual offender offenses], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code § 35-50-1-2(c) (1995 Supp.). Attempted murder is a Class A felony. I.C. § 35-41-5-1. The next higher class of felony is murder, which, in November 1995, carried a presumptive sentence of fifty-five years. I.C. § 35-50-2-3(a) (1995 Supp.).

including such crimes as murder and aggravated battery. It does not include attempted murder." Id. Thus the State and the Court of Appeals apparently reasoned that just as with the 1998 trial in Ellis, attempted murder was not on the list of crimes of violence at the time of Reed's trial in 1996. See I.C. § 35-50-1-2(a) (1995 Supp.).[2] The court thus analyzed whether Reed's convictions arose out of an episode of criminal conduct and concluded they did not.

Although we agree that Reed's convictions were not for crimes of violence, our analysis is slightly different from that of our colleagues on this point. At the time of Reed's appeal there had been no judicial construction of Indiana Code section 35-50-1-2(a) (1995 Supp.).[3] In fact before the statute's effective date of July 1, 1995 – four months before Reed engaged in the conduct providing the basis for his arrest and convictions in this case – the statute did not include language about crimes of violence.[4] Thus at the time Reed committed the offenses, and at the

---

[2] The statute was amended, however, in 2001 to include attempted murder as a "crime of violence." See I.C. § 35-50-1-2.

[3] Indiana Code section 35-50-1-2(a) (1995 Supp.) was first construed in Jackson v. State, 698 N.E.2d 809 (Ind. Ct. App. 1998), trans. denied. In that case the court determined that attempted murder was a crime of violence within the meaning of the statute. The court reasoned that although attempted murder was not specifically listed, aggravated battery, which is a lesser included offense of attempted murder, was listed. And as "charged" the defendant committed the offense of aggravated battery. Id. at 813. Even if Jackson had been the prevailing authority at the time of Reed's trial and appeal, it would have been clearly distinguishable from the facts here. In this case the charging information contains none of the essential elements necessary to convict Reed of battery.

[4] Prior to the 1995 amendment, Indiana Code section 35-50-1-2 read in relevant part: "Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances [listed elsewhere] in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." I.C. § 35-50-1-2(a) (1994 Supp.).

time of Reed's appeal, the question of whether attempted murder was a crime of violence within the meaning of Indiana Code section 35-50-1-2 (1995 Supp.) was one of first impression.[5]

It is certainly true that appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law. Fisher, 810 N.E.2d at 679; Trueblood, 715 N.E.2d at 1258. And it is equally true that an ineffective assistance claim cannot be based upon counsel's failure to argue legal reasoning of cases not yet decided at the time of appeal. Shaffer v. State, 674 N.E.2d 1, 7 (Ind. Ct. App. 1996). But failing to raise an issue of first impression where a plain reading of the statute demonstrated that Reed is entitled to immediate relief – a reduction from eighty years in prison to fifty-five years – is sufficient to demonstrate that this unraised issue was significant and obvious from the face of the record. We agree with the observation of the Pennsylvania Supreme Court that "this Court . . . has never relieved counsel of the obligation to vindicate his client's interests under existing statutory provisions." Commonwealth v. Hughes, 865 A.2d 761, 795 (Pa. 2004) (finding "merit" to a claim that counsel rendered ineffective assistance for failing to raise an issue on appeal even though no controlling decisional law existed at the time of trial and appeal). See also Ex Parte Welch, 981 S.W.2d 183, 185 (Tex. Crim. App. 1998) (finding ineffective assistance for counsel's failure to raise on appeal a matter of first impression declaring "it should have been evident from a plain reading of the [applicable] statute itself" that defendant was entitled to relief).

*B. Unraised issue clearly stronger?*

On direct appeal counsel raised three issues: (1) Reed did not knowingly, intelligently, and voluntarily waive his right to trial by jury; (2) the trial court did not adequately explain its reasons for enhancing the sentences for attempted murder and running the two sentences consecutively; and (3) the resultant eighty-year sentence was manifestly unreasonable. Pet. Exh. 2 at 1. There was little to no chance of prevailing on any of these claims.

Regarding the first issue, the record shows that Reed signed a written waiver in which he explicitly waived his right to a jury trial. In addition, the record shows that the trial court

---

[5] The novelty of the 1995 statute does not excuse the failure to raise the episode issue. Under the pre-1995 version, only "murder" and crimes causing serious bodily injury were not capped by that section. Consequently Reed would have had a clear winner in claiming his sentence contravened the statute.

engaged Reed in dialogue and concluded that he waived his right to a jury trial. We have held that a signed written waiver coupled with a brief colloquy between a defendant and the trial judge regarding waiver of a jury trial constitutes a sufficient waiver of the defendant's right to a jury trial. Rodgers v. State, 275 Ind. 102, 415 N.E.2d 57, 59 (1981).

As for the adequacy of the trial court's sentencing statement, our courts have routinely held that a "perfunctory recitation" and conclusory listing of the statutory factors is not sufficient to afford an adequate review of the appropriateness of the sentence imposed. Robey v. State, 555 N.E.2d 145, 152 (Ind. 1990); Shackelford v. State, 622 N.E.2d 1340, 1345 (Ind. Ct. App. 1993). But in this case, discussing the trial court's sentencing statement in some detail, the Court of Appeals explained, "Although here the trial court's sentencing explanation is not ideal, it does meet the minimum requirements necessary to be adequate." Reed, 49A05-9610-CR-438, slip op. at 5.

Finally, with respect to counsel's claim that Reed's sentence was manifestly unreasonable and therefore should be revised in light of the nature of the offense and character of the offender, this Court has recognized that the barrier for relief under our former Appellate Rule 17(B) was incredibly high and thus relief was seldom granted. Serino v. State, 798 N.E.2d 852, 856 (Ind. 2003); Prowell v. State, 687 N.E.2d 563, 568 (Ind. 1997) ("[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so."); Gregory v. State, 644 N.E.2d 543, 545 (Ind. 1994) (power to review and revise used "sparingly").[6] Further, in advancing the argument that Reed's sentence should be revised, counsel did not elaborate on Reed's character or the nature of the offenses Reed committed. Rather, she essentially complained that the trial court enhanced Reed's sentences and ran them

---

[6] Before January 1, 2003, an appellate court needed to find that a trial court's sentence was "manifestly unreasonable" before it could revise the sentence. "This barrier was so high that it ran the risk of impinging on another constitutional right contained in Article 7, that the Supreme Court's rules shall 'provide in all cases an absolute right to one appeal.'" Serino, 798 N.E.2d at 856 (quoting Ind. Const. art. VII, § 6). As a result, effective January 1, 2003, the rule was amended to authorize an appellate court to revise a sentence if it finds "after due consideration of the trial court's decision" that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). This formulation placed the central focus upon the role of the trial judge, while at the same time reserving for the appellate courts the chance to review sentencing decisions in a climate more distant from local clamor. Serino, 798 N.E.2d at 856-57.

consecutively based on the existence of a single aggravating factor. Pet. Exh. 2 at 7. First, this contention is not accurate. As the Court of Appeals noted, the trial court identified two aggravating factors: Reed's prior criminal history and that Reed was on parole for a previous conviction when he committed the instant offenses. Reed, No. 49A05-9610-CR-438, slip op. at 4. Second, this Court has determined that "[t]here is no statutory prohibition against using the same factors to enhance the sentence and to impose consecutive sentences." Parrish v. State, 515 N.E.2d 516, 521 (Ind. 1987).

It is readily apparent to us that a claim based on a statutory provision, clear on its face, limiting the length of consecutive sentences for attempted murders that arose out of a single episode of criminal conduct, is clearly stronger than the issues counsel raised on appeal. And as we have already discussed this unraised sentencing issue is significant and obvious from the face of the record. We conclude therefore that counsel's failure to raise the issue amounts to deficient performance falling below an objective standard of reasonableness.

### C. Prejudice to the defendant?

In general a trial court cannot order consecutive sentences in the absence of express statutory authority. Lee v. State, 816 N.E.2d 35, 37 (Ind. 2004); Baromich v. State, 252 Ind. 412, 249 N.E.2d 30, 33 (1969). "A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization." Rhodes v. State, 698 N.E.2d 304, 307 (Ind. 1998). At the time Reed committed the attempted murders, the statute limited the trial court's authority to impose consecutive sentences if the convictions were not for "crimes of violence" and the convictions "ar[ose] out of an episode of criminal conduct." I.C. § 35-50-1-2(c) (1995 Supp.). The statute did not prohibit consecutive sentences; rather, it limited the length of the aggregate term. We have already determined that in 1995 attempted murder was not included as a statutory crime of violence. Thus if this were the only point of contention, then we would be compelled to conclude that Reed's eighty-year sentence is illegal, and raising this issue on appeal not only would have been "more likely to result in reversal," see Bieghler, 690 N.E.2d at 194, but indeed reversal would be required. However, there is also the question of whether the crimes arose out of an episode of criminal conduct. After examining several cases in which the question has been raised, the Court of Appeals agreed with the post-conviction court

11

that "each of [Reed's] convictions stemmed from separate episodes of criminal conduct." Reed, 825 N.E.2d at 922. We disagree.

The statutory definition of "episode of criminal conduct" is as unambiguous and straightforward today as it was in 1995: "offenses or a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). The Court of Appeals addressed this provision in Tedlock v. State, 656 N.E.2d 273, 276 (Ind. Ct. App. 1995), holding in part that an episode of criminal conduct exists where "a complete account of one charge cannot be related without referring to details of the other charge." In that case, the defendant pleaded guilty to four counts of securities fraud arising out of crimes committed against different victims at different times spanning approximately two years. Id. at 276. The Court thus concluded that the defendant's crimes did not qualify as an episode of criminal conduct within the meaning of Indiana Code section 35-50-1-2(b). Subsequent Court of Appeals opinions seem to have seized upon the "complete account of one charge" language as an essential factor in determining whether offenses constitute an episode of criminal conduct.[7] Indeed even this Court has said, "[t]he issue is whether 'the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.'" O'Connell v. State, 742 N.E.2d 943, 950-51 (Ind. 2001) (quoting Flynn v. State, 702 N.E.2d 741, 748-49 (Ind. Ct. App. 1998); Tedlock, 656 N.E.2d at 276)).

---

[7] See, e.g., Monyhan v. State, 780 N.E.2d 1187, 1190 (Ind. Ct. App. 2003) (finding that defendant's convictions for three counts of battery and one count of attempted battery arose out of multiple episodes of conduct because a "complete account of one charge [could not] be related without referring to details of the other charge[s]"); Catt v. State, 749 N.E.2d 633, 642 (Ind. Ct. App. 2001) (relying upon Tedlock for the proposition that "the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge"); Harris v. State, 749 N.E.2d 57, 60 (Ind. Ct. App. 2001) (citing Tedlock for the test of whether a complete account of one charge can be given without reference to the other charge); Mendoza v. State, 737 N.E.2d 784, 790 (Ind. Ct. App. 2000) ("In determining whether certain convictions amount to a single criminal episode, we should consider whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge."); Ballard, 715 N.E.2d at 1281 (finding defendant's convictions for residential entry and two counts of felony battery arose out of single episode of criminal conduct because "a full description of either offense cannot be related without referring to the details of the other."); Jennings v. State, 687 N.E.2d 621, 623 (Ind. Ct. App. 1997) ("The term 'episode of criminal conduct' has been held to mean offenses or a connected series of offenses that are [so] closely related in time, place, and circumstance that a complete account of one charge cannot be related without referring to details of the other charge.").

However, this is a bit of an overstatement. We are of the view that although the ability to recount each charge without referring to the other can provide additional guidance on the question of whether a defendant's conduct constitutes an episode of criminal conduct, it is not a critical ingredient in resolving the question. Rather, the statute speaks in less absolute terms: "a connected series of offenses that are closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). And as we have observed, "Tedlock emphasizes the timing of the offenses" and "refers to the 'simultaneous' and 'contemporaneous' nature of the crimes which would constitute a single episode of criminal conduct." Smith v. State, 770 N.E.2d 290, 294 (Ind. 2002) (citing Tedlock, 656 N.E.2d at 276).

In any event, for our purposes, at the time of Reed's appeal in March 1997 there existed three published opinions from the Court of Appeals, in addition to Tedlock, that specifically addressed "episode of criminal conduct" within the meaning of Indiana Code section 35-50-1-2(b). See Reynolds v. State, 657 N.E.2d 438, 441 (Ind. Ct. App. 1995) (finding multiple episodes for three counts of burglary where defendant burglarized three different homes during the course of a day); Trei v. State, 658 N.E.2d 131, 133 (Ind. Ct. App. 1995) (finding a single episode for one count of sexual misconduct with a minor and two counts of criminal confinement where offenses committed "during a short period of time at one location, were integral parts of one continuous criminal design and plan, [and] were motivated by the same criminal intent"); Lockhart v. State, 671 N.E.2d 893, 904 (Ind. Ct. App. 1996) (finding multiple episodes for four counts of child molesting where offenses committed against the victim on various occasions over a three month period). Although each of the foregoing cases cited Tedlock in part for the proposition that a complete account of one charge cannot be related without referring to details of the other charge, the facts of each case showed that the timing of the offenses dictated whether the offenses were or were not single episodes of criminal conduct.

In this case, Reed's attempted murder convictions arise from gunshots fired in the direction of two police officers that were chasing Reed in separate police cars. More specifically, the record shows that about two minutes after the pursuit began Reed stopped his car, opened the door, and fired a gunshot in the direction of Officers Roach and Beachum, whose cars were stopped within yards of each other. App. at 68; Tr. at 205-08. Reed began driving

13

away, but a few seconds later he slowed down and fired two additional shots in the direction of Officer Beachum. Id. The record also shows that the time lapse between the first and last shots fired was approximately five seconds. Id. It was on the basis of these gunshots that Reed was charged with two counts of attempted murder. And although not precisely "simultaneous" or "contemporaneous," see Smith, 770 N.E.2d at 294, the two offenses were nonetheless "closely connected in time, place, and circumstance." I.C. § 35-50-1-2(b). They were thus a single episode of criminal conduct within the meaning of the statute. Appellate counsel's failure to raise this claim certainly prejudiced Reed because there is a reasonable probability that but for counsel's error the result of the appeal would have been different. Stated somewhat differently, based upon the state of the law at the time of Reed's direct appeal, the sentencing claim appellate counsel failed to raise was clearly more likely to result in reversal.

## Conclusion

We conclude that appellate counsel rendered ineffective assistance and therefore reverse the judgment of the post-conviction court declaring otherwise. This cause is remanded to the post-conviction court with instructions to enter a new sentencing order imposing a sentence not inconsistent with this opinion.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.