**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

APELLANT PRO SE:

**GUY J. IVESTER**
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GUY IVESTER,                               )
                                           )
    Appellant-Petitioner,              )
                                           )
      vs.                             )    No. 33A04-1209-PC-491
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Respondent.               )

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable David A. Kolger, Special Judge
Cause No. 33C01-1011-PC-5

**September 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Guy J. Ivester, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. Ivester presents five issues on appeal: 1) whether he was denied the effective assistance of his trial counsel; 2) whether his guilty plea was entered voluntarily; 3) whether there was prosecutorial misconduct during these proceedings; 4) whether the trial court abused its discretion in not penalizing the State for late discovery compliance; and 5) whether the post-conviction court abused its discretion in denying certain of Ivester's discovery requests. Concluding that Ivester was not denied the effective assistance of his trial counsel, that he entered his guilty plea voluntarily, that his claims of prosecutorial misconduct and trial court abuse of discretion are unavailable, and that there was no abuse by the post-conviction court, we affirm.

## Facts and Procedural History

On October 2, 2008, Ivester was charged with three counts of dealing in a schedule II controlled substance, all as Class A felonies, and maintaining a common nuisance, as a Class D felony. The charges stemmed from at least two separate hand-to-hand purchases in July of 2008, in which Detective Aaron Strong of the Henry County Area Drug Task Force, working undercover, purchased oxycodone and other controlled substance pills from Ivester. The State offered various plea agreements to Ivester, who refused all offers, believing that the State, once past discovery deadlines, would not be able to have the relevant lab report admitted at trial and therefore would not be able to prove its case. Trial was scheduled for September 21, 2009. On the day of trial, the court denied Ivester's motion in limine to exclude the lab report. Following the denial of the motion, and prior to jury voir dire, Ivester entered into a plea agreement with the State.

Pursuant to the plea agreement, Ivester pleaded guilty to count II, dealing in a schedule II controlled substance as a Class A felony, and his sentence was to be capped at twenty years.

The trial court held a sentencing hearing in October of 2009. Prior to sentencing, Ivester's counsel orally moved the court to permit Ivester to withdraw his guilty plea, which motion the court denied. The court sentenced Ivester to twenty years imprisonment, with two years suspended to probation.

In November of 2010, Ivester filed a pro se petition for post-conviction relief, which was later amended. The post-conviction court held a hearing in June of 2012, and in August of 2012 the court issued its findings of fact and conclusions of law, denying Ivester's petition. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Standard of Review

To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Thacker v. State, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), trans. denied. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, which is error that leaves us with a definite and firm conviction that a mistake has been made. Benefield v. State, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. Id. We examine only the probative evidence and reasonable inferences that support the post-conviction court's determination

3

and we do not reweigh the evidence or judge the credibility of the witnesses. Conner v. State, 711 N.E.2d 1238, 1245 (Ind. 1999), cert. denied, 531 U.S. 829 (2000).

## II. Ineffective Assistance of Trial Counsel

### A. Standard of Review

We review claims of ineffective assistance of counsel under the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Bieghler v. State, 690 N.E.2d 188, 192 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and that the lack of reasonable representation prejudiced him. Randolph v. State, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), trans. denied. To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To show prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Pruitt v. State, 903 N.E.2d 899, 906 (Ind. 2009).

Under this standard, judicial scrutiny of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Bieghler, 690 N.E.2d at 192 (citing Strickland, 466 U.S. at 689). Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference. Randolph, 802 N.E.2d at

4

1013. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. Id.

In a case such as this one, where the petitioner pleaded guilty, the two prongs remain, but our supreme court has outlined what is required to show prejudice when there was no trial. In all cases, the petitioner must demonstrate "a reasonable probability that the hypothetical reasonable defendant would not have pled guilty and elected to go to trial if properly advised." Segura v. State, 749 N.E.2d 496, 509 (Ind. 2001) (Sullivan, J., concurring in result). The petitioner must do more than simply allege that a plea would not have been entered. Id. at 507. Where the alleged error is one that would have affected a defense or is related to a failure to mitigate a penalty, the petitioner must show that there would have been a reasonable probability of success at trial. Id. at 503, 507. Where the alleged error is counsel's omission or misdescription of penal consequences that is relevant to both a plea and a conviction at trial, however, the bar is somewhat lower. In those cases, the petitioner must allege "'special circumstances' or . . . 'objective facts' supporting the conclusion that the decision to plead guilty was driven by the erroneous advice." Id. at 507 (citations omitted).

Finally, we note that the two prongs of the Strickland test are separate and independent inquiries. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we may determine the prejudice prong first without inquiring into whether counsel's performance was adequate. Thacker, 715 N.E.2d at 1284.

B.  Ivester's Trial Counsel

Ivester presents several arguments regarding his trial counsel's assistance.  Ivester first argues that his counsel was ineffective for failing to compel discovery, specifically disclosure of the identity of a confidential informant involved in the transactions upon which the charges against him were based.  This appears to relate back to several issues that Ivester raised with the post-conviction court below.[1]  It seems that the "informant" to whom Ivester refers might be the store clerk who facilitated Detective Strong's meeting with Ivester.  The post-conviction court noted that the nature of the underlying transaction—i.e. a hand-to-hand transaction from Ivester to Detective Strong—renders the "proposed observations of any other civilian witness exceedingly insignificant." Post-Conviction Court Findings of Fact and Conclusions of Law at 19.  Additionally, Ivester was aware at the time he pleaded guilty that the identity of any "informant" had not been disclosed.  As for Ivester's claim that the informant could have established entrapment as a viable defense, the post-conviction court noted that a number of specific facts in Ivester's case negated the possibility of entrapment as a defense, namely that there were multiple transactions, agreements as to price, and that one transaction occurred in Ivester's home.  Ivester has not shown that, but for counsel's actions, he would not have pleaded guilty.  We see no clear error on the part of the post-conviction court.

Ivester next argues that his counsel was ineffective in failing to depose the State's witnesses.  Ivester's trial counsel, John Hovanec, testified at the post-conviction relief hearing.  Hovanec testified that he did not depose Detective Strong because he had

---

[1]  Ivester's brief is difficult to decipher in parts, although it does not appear that he is attempting to raise issues here on appeal that were not raised below.  See Walker v. State, 843 N.E.2d 50, 58 n.2 (Ind. Ct. App. 2006) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." ) (citation omitted), trans. denied.

6

viewed the videotapes of the drug transactions, and taped statements from Detective Strong, and Hovanec did not believe that a deposition would add anything or that Detective Strong would deny his earlier statements. The post-conviction court noted that Detective Strong testified at the post-conviction relief hearing, corroborating Hovanec's testimony, and the post-conviction court concluded that deposing Detective Strong would have been a waste of counsel's time and may even have solidified the State's case against Ivester. As for deposition of the lab analyst who ran the lab report on the drugs that Detective Strong purchased from Ivester, Hovanec testified that their trial strategy was to try to keep the lab results out of court, and that depositing the lab analyst would only support the report and would not help Ivester's case.

Ivester's third complaint relates to Hovanec not moving to suppress the drug analysis results. Firstly, Hovanec did in fact move in limine to have the report excluded due to the late discovery of the report, and the court denied the motion. Secondly, the State correctly notes that, to the extent that the motion did not already encompass the lab analyst's testimony, it is likely, based on the court's denial of the first motion, that the court would also have denied any motion to exclude the analyst's testimony. We do not believe that Ivester was prejudiced by any alleged failure on Hovanec's part.

Ivester's fourth claim is that Hovanec incorrectly advised him regarding a potential sentence under the plea. Ivester claims that he was led to believe that his entire sentence would likely be suspended. He also claims that the trial judge stated that she would not "penalize" him if he pleaded guilty, and that this meant that he would not receive an executed sentence. We agree with both the State and the post-conviction court that the trial judge's statements were not an indication that the court would not give

Ivester an executed sentence. Rather, because of late discovery on the part of the State, the court was willing to do what it would not normally do—accept a guilty plea from Ivester at that late stage—rather than penalizing him for reacting only then to the belated lab report. As for sentencing advice, Hovanec testified that he and Ivester spoke at length about possible sentences and outcomes up to the date of trial, as Ivester was offered various plea agreements. The State notes that if Ivester had not pleaded guilty, he would have faced a possible sentence much higher than the twenty year cap provided by the plea agreement. The court questioned Ivester before accepting his plea, and specifically made sure he understood that the cap on his sentence was twenty years and that he would be able to argue for suspension, but the State would also be able to ask for the entire twenty years executed. The court also made sure that Ivester understood that he was waiving his right to appeal "whatever sentences [sic] issued by the Court." Petitioner's Exhibit 1, at 9. Finally, the court received assurances from Ivester that he was not expecting anything different from what the judge had just reviewed, and that he was not forced into the plea. Ivester fails to show objective facts supporting a conclusion that his decision to plead was induced by erroneous advice.

Finally, Ivester argues that Hovanec was ineffective in failing to file a written motion to withdraw the guilty plea. It is true that after entry of a guilty plea but before sentencing, a motion to withdraw must be made in writing. Ind. Code § 35-35-1-4(b). However, we need not reach whether this constituted deficient performance, because we agree with the post-conviction court that Ivester was not prejudiced by any failure on Hovanec's part. Following Hovanec's oral motion to withdraw Ivester's plea, the trial court noted several reasons that it would have denied the motion to withdraw even if it

8

had been properly presented in written form. Namely, that Ivester had appeared in court and provided a factual basis under oath; that the court had reviewed Ivester's rights and the implications of the plea with him and that he understood the rights he was waiving; that the State would have been substantially prejudiced by a withdrawal of the plea at that point; and that Ivester presented no evidence indicating that his withdrawal was necessary to prevent a manifest injustice.

In sum, testimony at the post-conviction relief hearing showed that Hovanec communicated with Ivester and worked with him to develop a strategy, counseled him to try to achieve the best possible outcome, and that Hovanec was prepared to proceed with trial as scheduled. Ivester has not shown any prejudice as a result of any possible failures on the part of his trial counsel, or that he would not have pleaded guilty had his counsel done things differently. The post-conviction court did not clearly err in denying Ivester's claim.

### III. Voluntariness of Guilty Plea

#### A. Standard of Review

On review of a guilty plea, we look at all of the evidence before the post-conviction court. Moffitt v. State, 817 N.E.2d 239, 249 (Ind. Ct. App. 2004), trans. denied. If evidence exists that supports the post-conviction court's determination that the guilty plea was voluntary, intelligent and knowing, we will not reverse. Id. When a guilty plea is attacked because of alleged misinformation concerning sentencing, the issue of the validity of such plea is determined by the following two-part test: (1) whether the defendant was aware of actual sentencing possibilities; and (2) whether the accurate information would have made any difference in his decision to enter the plea. Id.

9

## B. Voluntariness of Ivester's Plea

Ivester argues that his guilty plea was involuntary because of the State's late discovery, resulting in a lack of preparedness on the part of his trial counsel, and because he believed that his entire sentence would be suspended based on the trial judge's statement that she would not "penalize" him.

As discussed above, Ivester misunderstands the trial judge's statement about not penalizing him. The statement did not indicate that the court would suspend Ivester's entire sentence, but rather indicated the reason why the court was allowing a plea to be entered so late in the process. Additionally, there is evidence to support the post-conviction court's determination that Ivester was advised as to the potential sentence under his plea agreement and that he stated under oath his comprehension of the possible sentence. The post-conviction court also noted that Ivester testified at the post-conviction relief hearing, and that at no point did he state that he believed he would get to go home and not be sent to prison as a result of the plea agreement. Rather, he stated that he believed he deserved a second chance. We conclude that Ivester was aware of the actual sentencing possibilities, and any more accurate information would not have made a difference in his decision to accept the plea.

As for the State's late discovery, discovery is not generally relevant to voluntariness—while it may go to the strength of the State's case, it does not go to whether Ivester's plea was voluntary. Nonetheless, Hovanec testified that he had discussed with Ivester the likelihood that the report would be given late, and that the court would nonetheless allow it to be entered into evidence. Hovanec also testified that he was fully prepared for trial, and the post-conviction court found Hovanec to be

credible. There is evidence to support the post-conviction court's determination that Ivester's plea was voluntary.

## IV. Prosecutorial Misconduct

Ivester next argues that the prosecutor in his case engaged in misconduct by failing to disclose the informant, among other claims. Ivester notes that claims of prosecutorial misconduct are generally reserved for direct appeal, but argues that fundamental error is available to him as a post-conviction relief claim. Ivester cites to Keller v. State, 481 N.E.2d 1109, 1112 (Ind. Ct. App. 1985), for the proposition that his prosecutorial misconduct issue would have been available on direct appeal (we need not delve into the contemporaneous objection that would have been required to make the issue available on appeal). However, as the State notes, fundamental error is not available as a free-standing issue on petition for post-conviction relief. Graham v. State, 941 N.E.2d 1091, 1097 (Ind. Ct. App. 2011). This argument is therefore not available to Ivester.

Nonetheless, we briefly observe that prosecutorial misconduct requires a determination both that the prosecutor engaged in misconduct and that such misconduct placed the defendant in a position of grave peril, and that the potential for peril is measured by the probable persuasive effect on the jury's decision. Ratliff v. State, 741 N.E.2d 424, 428-29 (Ind. Ct. App. 2000), trans. denied. We agree with the post-conviction court here that it is relevant that Ivester was never before a jury. Moreover, we also agree that his attorney's testimony that he was fully prepared to proceed to trial and further discovery was not necessary shows that Ivester was not placed in a position of grave peril.

11

## V. Abuse of Discretion of Trial Court

Ivester also argues that the trial court abused its discretion in not excluding evidence that was submitted after discovery deadlines. The State notes that by pleading guilty, Ivester waived any challenge to the pre-trial rulings of the trial court. Neville v. State, 663 N.E.2d 169, 172 (Ind. Ct. App. 1996). As noted above, any free-standing claim of fundamental error is also not available here.[2]

## VI. Abuse of Discretion of Post-Conviction Court

Finally, Ivester argues that the post-conviction court abused its discretion when it denied certain of his discovery requests, namely requests to have the video of his drug transaction with Detective Strong and to call the "confidential informant" as a witness during the post-conviction relief hearing.

The post-conviction court is afforded broad discretion in ruling on discovery matters, and we will affirm those decisions absent a showing of clear error and resulting prejudice. Wilkes v. State, 984 N.E.2d 1236, 1251 (Ind. 2013). We see no such clear error here. Ivester's trial counsel testified as to having seen the video and what was on it, and Detective Strong testified at the post-conviction relief hearing as well. It is not clear what the video itself would have added to Ivester's post-conviction claims. The same goes for denying Ivester's request to call the confidential informant as a witness. As we noted above, we are not convinced that any such witness would have added anything to the evidence that Ivester already presented at his hearing, and we see no clear error on the part of the post-conviction court in denying Ivester's request.

---

[2] Ivester again references the trial court's statement about not "penalizing" him here within his argument that the trial court abused its discretion. We again point out that Ivester seems to have misunderstood the trial court's statement.

<u>Conclusion</u>

Concluding that Ivester was not denied the effective assistance of his trial counsel, that his guilty plea was voluntary, that his claim of prosecutorial misconduct is unavailable but nonetheless there was no such misconduct, that his claim of abuse of discretion on the part of the trial court is unavailable, and that there was no abuse of discretion on the part of the post-conviction court, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.